UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-301-BR

| | |
|---|---|
| KAREN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| HOUSEHOLD LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the 1 June 2012 motion for summary judgment filed by defendant Household Life Insurance Company ("Household"). (DE # 18.) Also before the court is Household's 1 June 2012 request for judicial notice. (DE # 15.) The period to respond and reply to these motions has elapsed, and the matters are now ripe for disposition.

## I. BACKGROUND

Plaintiff Karen Johnson ("plaintiff") was married to Kenneth Strickland ("Strickland"). They divorced in 1992. (Pl.'s Dep., DE # 21-6, at 8:24-9:1.) Plaintiff and Strickland renewed their relationship in or around 2006, when Strickland moved in with plaintiff. (Id. at 9:2-11.)

On 8 July 2009, Strickland applied for life insurance with Household over the telephone. (Id. at 11:12-25; S. Zelichowski Decl., DE # 17, ¶ 14.) The application required Strickland to speak with a Household insurance agent and provide verbal answers to seven yes-or-no questions. (S. Zelichowski Decl., DE # 17, ¶¶ 10-11, 14 & Ex. 1, DE # 17-1.) Plaintiff was present during the application process, and she occasionally interceded and spoke to Household's agent during the call. (Pl.'s Dep., DE # 21-6, at 11:20-22, 12:13-16.) Plaintiff observed that Strickland became frustrated with the application process, particularly because he

was having difficulty understanding some of the legal terms used by the agent. (Id. at 12:5-12.) Plaintiff also observed that Household's agent was aware of Strickland's frustration with the process. (Id. at 12:8-9.)

The agent completed the application using the answers provided by Strickland. (S. Zelichowski Decl., DE # 17, ¶¶ 10, 14 & Ex. 1, DE # 17-1.) Question 4 on the application reads as follows:

> In the past 2 years, have you had your driver's license revoked, suspended or been convicted of reckless driving, driving without a valid license or for driving while under the influence of alcohol or drugs (DWI, DUI)? Or have you had more than 2 moving violations in the past 12 months? Or have you been convicted of a felony?

(Id., Ex. 1, DE # 17-1, at 2.) Strickland answered "no" to Question 4. (Id.)

Based on Strickland's answers to the questions on the application, Household approved his application and issued a ten-year individual term life insurance policy, effective 9 July 2009, with a face value of $100,000 (the "policy"). (Id. ¶ 18 & Ex. 2, DE # 17-2.) Plaintiff was named the beneficiary of the policy. (Id. ¶ 18 & Ex. 1, DE # 17-1.)

Strickland died on 14 February 2010, approximately seven months after the effective date of the policy. (Compl., DE # 1-2, ¶ 8; Pl.'s Mem. Resp. Def.'s Mot. Summ J., Ex. 2, DE # 21-2.) The official cause of death listed on his death certificate was bladder cancer. (Id.) After Strickland's death, plaintiff filed a claim with Household to obtain the death benefit under the policy. (Compl., DE # 1-2, ¶ 9; S. Zelichowski Decl., DE # 17, ¶ 19.)

Because Strickland died within the period that the policy remained contestable pursuant to its terms and under North Carolina law, Household hired Research Service Bureau, Inc. ("RSB") to investigate plaintiff's claim. (S. Zelichowski Decl., DE # 17, ¶ 20 & Ex. 2, DE # 17-

2

2, at 5.) RSB's investigation of plaintiff's claim included obtaining copies of Strickland's driving record from the North Carolina Department of Motor Vehicles ("DMV") and criminal records from the Clerk of Court for Johnston County, North Carolina. (Id. ¶¶ 21-23 & Exs. 3-5, DE ## 17-3, 17-4, 17-5.)

As a result of this investigation, Household discovered that on 30 October 2007, Strickland was charged with driving a motor vehicle while his license was revoked, which is a Class 1 misdemeanor pursuant to N.C. Gen. Stat. § 20-28(a). (Id., Ex. 4, DE # 17-4, at 9; Def.'s Req. Judicial Notice, Ex. A., DE # 15-1.) On 5 March 2008, Strickland appeared in court and was convicted of the lesser-included offense of driving without an operator's license, which is a Class 2 misdemeanor pursuant to N.C. Gen. Stat. §§ 20-7(a)(3) and 20-35(a). (Id.; see also S. Zelichowski Decl., Ex. 5, DE # 17-5.) At that time, he was sentenced to serve thirty days in jail, which was suspended on the condition that he successfully complete a twelve-month unsupervised probation period, and he was also required to pay a fine and attorneys' fees. (Id.; see also Pl.'s Dep., DE # 21-6, at 26:6-16.)

On 4 August 2008, Strickland was again charged pursuant to N.C. Gen. Stat. § 20-28(a) with driving a motor vehicle while his license was revoked, and he was also charged pursuant to N.C. Gen. Stat. § 20-111 with operating a vehicle with an expired registration and tag. (S. Zelichowski Decl., Ex. 4, DE # 17-4, at 9; Def.'s Req. Judicial Notice, Ex. B., DE # 15-2.) Strickland did not appear in Johnston County District Court to defend himself against these charges, and on 25 February 2009, he was convicted of failing to appear. (S. Zelichowski Decl., Ex. 3, DE # 17-3.) On 3 May 2009, the DMV suspended Strickland's privileges to hold a North Carolina driver's license as a result of his failure to appear to answer the 4 August 2008

3

charges.[1] (Id.)

By letter dated 30 November 2010, Household denied plaintiff's claim, rescinded coverage, and declared the policy void from its inception. (Id. ¶ 24 & Ex. 6, DE # 17-6.) In the letter, Household stated that during the investigation of plaintiff's claim, it had received DMV records indicating that Strickland's license was suspended on 3 May 2009. (Id.) Household explained that this suspension "was material to the risk, and, therefore, [Household] would have declined Mr. Strickland for coverage had he disclosed this information on the application in response to the applicable questions." (Id.) Household issued a check to plaintiff in the amount of the premiums paid on the policy. (Id. ¶ 28; Pl.'s Dep., DE # 21-6, at 39:6-9, 44:9-13.) Plaintiff did not accept the refund and has not cashed the refund check. (Pl.'s Dep., DE # 21-6, at 39:6-9, 44:14-19.)

Plaintiff commenced this action in North Carolina state court on 12 May 2011. On 15 June 2011, Household removed plaintiff's lawsuit to this district. (Notice of Removal, DE # 1.) Plaintiff asserts claims for breach of contract, unfair and deceptive acts and practices, intentional/negligent misrepresentation, breach of fiduciary duty, and punitive damages. (Compl., DE # 1-2.) Household filed a motion for summary judgment on 1 June 2012. (DE # 18.) Plaintiff filed a response in opposition on 22 June 2012, and Household filed a reply on 4 July 2012. (DE ## 21, 22.) On 1 June 2012, Household also filed a request for judicial notice. (DE # 15.) Plaintiff did not file a response.

---

[1] The 4 August 2008 charges were eventually dismissed on 1 July 2009 with leave to reinstate. (S. Zelichowski Decl., Ex. 4, DE # 17-4, at 9.)

4

Case 5:11-cv-00301-BR   Document 26   Filed 10/26/12   Page 4 of 18

## II. DISCUSSION

A.   Household's Request for Judicial Notice

Household has asked the court to take judicial notice of the Johnston County, North Carolina certified court records in the cases of State v. Strickland, 07-CR-709329, and State v. Strickland, 08-CR-006522, which are attached as exhibits (DE ## 15-1, 15-2) to Household's Request for Judicial Notice. A court may take judicial notice at any stage in the proceeding. Fed. R. Evid. 201(d). "[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (citation and internal quotation marks omitted); see also United States v. Stanley, 449 F. App'x 249, 251 n.2 (4th Cir. 2011) (taking notice of North Carolina judgments of conviction). In accordance with Federal Rule of Evidence 201(c)(2), the court takes judicial notice of the certified criminal records that have been submitted in this case. Accordingly, Household's request for judicial notice will be granted.

B.   Household's Motion for Summary Judgment[2]

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are

---

[2] As an initial matter with respect to the motion for summary judgment, the court notes that in its reply brief (DE # 22 at 1), Household has requested that the court strike from the record Exhibits 3 and 4 (DE ## 21-3, 21-4) to plaintiff's memorandum in opposition to Household's motion for summary judgment. Having fully considered the request, it is denied.

material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. Id. at 255.

Where the moving party bears the burden of proof as to an issue, such as an affirmative defense, it "may prevail on its motion for summary judgment and establish an affirmative defense when it has produced credible evidence – using any of the materials specified in Rule 56(c) – that would entitle it to a directed verdict if not controverted at trial." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 614 (4th Cir. 1999) (citation and internal quotation marks omitted), overruled on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012). "When the defendant produces such evidence supporting its affirmative defense, the burden of production shifts back to the plaintiff who must come forward with specific facts showing that there is a genuine issue for trial." Brinkley, 180 F.3d at 614 (citations and internal quotation marks omitted).

1. Breach of contract

Plaintiff asserts that Household breached the policy that was issued to Strickland by denying her claim for benefits. In this case, Strickland died within the period that the policy remained contestable pursuant to its terms and under North Carolina law.[3] (S. Zelichowski Decl., Ex. 2, DE # 17-2, at 5.) See N.C. Gen. Stat. § 58-58-22(2). When a life insurance policy

---

[3] North Carolina substantive law applies in this case because this court has jurisdiction pursuant to 28 U.S.C. § 1332(a). See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Limbach Co. LLC v. Zurich Am. Ins. Co., 396 F.3d 358, 361 (4th Cir. 2005).

6

is contestable, an insurer may rescind the policy by showing that the insured made material misrepresentations on the insurance application. See, e.g., N.C. Gen. Stat. § 58-3-10 ("All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy."); Ward v. Durham Life Ins. Co., 381 S.E.2d 698, 702 (N.C. 1989) ("A policy of life insurance may be avoided by showing that the insured made representations which were material and false." (citation and internal quotation marks omitted)); Tharrington v. Sturdivant Life Ins. Co., 443 S.E.2d 797, 800 (N.C. Ct. App. 1994) (same).

Household argues that because Strickland's answer to Question 4 on his life insurance application was both false and material, Household is entitled to rescind the policy. Household has the burden of proving material misrepresentation as an affirmative defense to the enforcement of an insurance contract. See Bryant v. Nationwide Mut. Fire Ins. Co., 329 S.E.2d 333, 338 (N.C. 1985).

As previously stated, Question 4 on the insurance application reads in full:

> In the past 2 years, have you had your driver's license revoked, suspended or been convicted of reckless driving, driving without a valid license or for driving while under the influence of alcohol or drugs (DWI, DUI)? Or have you had more than 2 moving violations in the past 12 months? Or have you been convicted of a felony?

(S. Zelichowski Decl., DE # 17, ¶¶ 15-16 & Ex. 1, DE # 17-1.) Strickland answered "no" to Question 4. (Id.) When Strickland provided this answer to Household, he represented that in the two years preceding the date of his insurance application, he had not had his driver's license suspended or been convicted of driving without a valid license. However, Strickland was

7

convicted of driving without an operator's license on 5 March 2008, and his license was suspended on 3 May 2009. (Id., Exs. 3-5, DE ## 17-3, 17-4, 17-5; Def.'s Req. Judicial Notice, Ex. A., DE # 15-1.) Therefore, when Strickland answered Question 4 in the negative on 8 July 2009, this answer was false.

Plaintiff does not deny that Strickland's license was suspended in 2009 or that he was convicted of driving without an operator's license in 2008. Nevertheless, plaintiff argues that Strickland's answer to Question 4 "was not necessarily false" (Pl.'s Mem. Resp. Def.'s Mot. Summ J., DE # 21, at 5) because (1) Question 4 was confusing and Strickland did not understand it; (2) the agent who completed Strickland's application wrote down the incorrect answer; or (3) the agent made an incorrect conclusion as to what Strickland's answer to Question 4 should have been. (Id. at 6-7.) The court first notes that there is no evidence in the record to show that Strickland was specifically confused about the meaning of Question 4. However, even if the record did contain evidence demonstrating Strickland's confusion with regard to this particular question, it would make no difference to the analysis. "In this jurisdiction it is well settled that a misrepresentation of a material fact, or the suppression thereof, in an application for insurance, will avoid the policy even though the assured be innocent of fraud or an intention to deceive or to wrongfully induce the assurer to act, or whether the statement be made in ignorance or good faith, or unintentionally." Tharrington, 443 S.E.2d at 801 (citation and internal quotation marks omitted); see also Rhinehardt v. N.C. Mut. Life Ins. Co., 119 S.E.2d 614, 616 (N.C. 1961) ("If insured made the statement and if it was false, the question as to whether it was fraudulently, knowingly or innocently made is of no importance."); Inman v. Woodmen of the World, 189 S.E. 496, 497 (N.C. 1937) (life insurance policy was declared void upon showing of material

8

misrepresentation during application process, and defendant was not required to show that the misrepresentation was fraudulent). Thus, Strickland's state of mind when the representation was made is irrelevant in determining whether his answer to Question 4 was false.

Furthermore, there is absolutely no evidence in the record which indicates that Household's agent inadvertently wrote down an incorrect answer for Question 4 or made an incorrect conclusion regarding Strickland's answer to that question. Although plaintiff may hope that her theories about the agent's actions are true, they amount to nothing more than pure speculation and conjecture as to what might have happened. See Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (the non-moving party cannot "create a genuine issue of material fact through mere speculation" (citation and internal quotation marks omitted)); Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995) (any inferences drawn from the underlying facts must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture"). Because plaintiff has not come forward with any evidence to support her theories regarding the actions taken by Household's agent when the application was completed, she has failed to create a genuine dispute of material fact regarding the issue of whether the representation made by Strickland was false.

Plaintiff alternatively asserts that Household is not entitled to rescind the policy because its agent affirmatively knew that Strickland's insurance application contained misrepresentations at the time it was accepted, and such knowledge should be imputed to Household. (Pl.'s Mem. Resp. Def.'s Mot. Summ J., DE # 21, at 9.) Plaintiff relies on Ward v. Durham Life Insurance Co., 381 S.E.2d 698 (N.C. 1989), in support of this proposition. In Ward, the plaintiff presented evidence demonstrating that the insurance agent at issue had actual notice of the

9

misrepresentations contained in the insurance application. Id. at 700-01, 703. In this case, however, plaintiff has offered absolutely no evidence to show that Household's agent knew about Strickland's driving record or related criminal history when he accepted Strickland's application. At her deposition, plaintiff was asked about the conversations that she and Strickland had with Household's agent, and she did not indicate that either she or Strickland had an explicit discussion with the agent regarding Strickland's driving record or criminal history. (Pl.'s Dep., DE # 21-6, at 11:20-12:20.) To the extent that plaintiff is arguing that Strickland's alleged confusion or frustration should have put the agent on notice that Strickland's answer to Question 4 was false, the court has found no case in which a court applying North Carolina law imputed knowledge of an applicant's misrepresentation to an insurance agent based on indirect or circumstantial evidence. Regardless, as previously mentioned, there is no evidence in the record which shows that Strickland was specifically confused about the meaning of Question 4. As a result, plaintiff's argument fails with respect to this issue.

The court next considers whether the representation made by Strickland was material. "[A] representation in an application for an insurance policy is material 'if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract[.]'" Luther v. Seawell, 662 S.E.2d 1, 4 (N.C. Ct. App. 2008) (alterations in original) (quoting Goodwin v. Investors Life Ins. Co. of N. Am., 419 S.E.2d 766, 769 (N.C. 1992)); see also Wells v. Jefferson Standard Life Ins. Co., 190 S.E. 744, 745 (N.C. 1937) ("[E]very fact untruly asserted or wrongfully suppressed must be regarded as material if the knowledge or ignorance of it would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium." (citation and internal

10

quotation marks omitted)); Tharrington, 443 S.E.2d at 800. This test is a subjective one. Goodwin, 419 S.E.2d at 769. The determinative factor is whether the insured's false answer would have influenced the insurance company "in deciding <u>for itself, and in its own interest</u>, the important question of accepting the risk, and what rate of premium should be charged." Id. (emphasis in original) (citation and internal quotation marks omitted).

In support of its argument that Strickland's misrepresentation was material, Household has submitted the declaration of Sherry Zelichowski ("Zelichowski"), who has been an Underwriting Consultant – Assistant Vice President for Household since 2007. (S. Zelichowski Decl., DE # 17, ¶¶ 3-4.) Zelichowski states that she has worked for Household for over twenty years, and she establishes that she has experience and training in underwriting. (Id. ¶¶ 4-6.) In her position, she is responsible for, among other things, auditing and reviewing contestable claims. (Id. ¶ 6.) In addition, Zelichowski declares that she has personal knowledge of and is competent to testify about Household's underwriting policies and about Strickland's policy in particular by reason of her employment with Household, familiarity with Household's underwriting policies, and review of Strickland's claim file. (Id. ¶¶ 1-13.)

According to Zelichowski's declaration, Household's underwriting policy provides that if an applicant for life insurance answers "no" to Questions 2 through 7 on the application, Household automatically issues the policy without further review. (Id. ¶ 12.) In contrast, if an applicant answers "yes" to any of these same questions, the application is automatically denied.[4] (Id.) Based on these policies, Zelichowski declares that Household would have denied Strickland's application for insurance if he had answered "yes" to the inquiries contained in

---

[4] A "yes" answer to Question 1 regarding the use of tobacco or nicotine would not necessarily result in a denial. (S. Zelichowski Decl., DE # 17, ¶ 12 & Ex. 1, DE # 17-1.)

11

Question 4 regarding his driving record and related criminal history. (Id. ¶ 17.)

"Undoubtedly, in some instances a question asked on an insurance application may be so immaterial under the circumstances that it would not allow an insurer to avoid a policy if answered falsely." Goodwin, 419 S.E.2d at 769. In this case, however, there is a "strong logical relationship" between the topics asked about in Question 4 and the assessment of the risk. Id. at 769; see also id. at 769-70 (noting that "the question of an applicant's driving record is related to determining an actuarially sound premium"). Here, it is clear that if Strickland had provided truthful answers regarding his driving record and related criminal history, Household would not have agreed to insure him. Thus, the court finds that Zelichowski's declaration establishes the materiality of Strickland's misrepresentation. See Best v. Nationwide Life Ins. Co., No. 4:07-CV-157-BO, 2008 WL 4610231, at *2 (E.D.N.C. Oct. 16, 2008) (life insurance applicant's "failure to disclose her criminal history was material because no contract would have existed if she had not provided the false statement").

Plaintiff attempts to create a genuine dispute of material fact by arguing that "[a] reasonable jury" could find Zelichowski's explanation of Household's underwriting policies "not to be credible." (Pl.'s Mem. Resp. Def.'s Mot. Summ J., DE # 21, at 8.). Plaintiff maintains that "[i]t strains the bounds of credulity" to think that Household would reject all insurance applications which include a "yes" answer to Questions 2 through 7 and that "it seems unlikely that a 'yes' answer to any of these questions would inevitably trigger an automatic and absolute denial." (Id.)

Plaintiff has not, however, provided any evidence to support this argument, either through affidavits, deposition testimony, responses to discovery, an expert report, or other

12

Case 5:11-cv-00301-BR   Document 26   Filed 10/26/12   Page 12 of 18

documentary evidence. "While materiality is generally a question of fact for the jury," Tharrington, 443 S.E.2d at 800, plaintiff cannot create a genuine issue for trial simply by contending that Household's proffered explanation of its underwriting standards is a lie or is not credible without providing any evidence or basis for that claim. See Jones v. Owens-Corning Fiberglas Corp., 69 F.3d 712, 718 (4th Cir. 1995) (the party opposing summary judgment may not "merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof" (citations and internal quotation marks omitted)); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1165 (3d Cir. 1990) (a non-moving party "cannot survive summary judgment simply by asserting that the factfinder might disbelieve the testimony of [the movant's] witnesses"); Newby v. Whitman, 340 F. Supp. 2d 637, 662 (M.D.N.C. 2004) (citing Carroll v. United Steelworkers of Am., 498 F. Supp. 976, 978 (D. Md.) ("In order for the opposing party to raise an issue of credibility he must produce by way of affidavit or otherwise sufficient evidence to show the court that at trial he will be able to produce some fact to shake the credibility of the affiants. Mere hopes are not enough." (citation and internal quotation marks omitted)), aff'd, 639 F.2d 778 (4th Cir. 1980)).

Rather, "[w]hen the defendant produces sufficient evidence in support of its affirmative defense, the burden of production shifts back to the plaintiff[,]" who "must produce specific evidentiary materials that demonstrate the existence of a genuine issue for trial." Brinkley, 180 F.3d at 615 (emphasis added) (citation and internal quotation marks omitted). If plaintiff truly believes that Zelichowski's declaration is not credible, then it was incumbent upon her to depose Zelichowski or otherwise explore Zelichowski's testimony during discovery and attempt to expose any inconsistencies in the testimony that could potentially cast doubt on the declaration.

13

See Jones, 69 F.3d at 718. Because plaintiff has not brought forth any evidence to support her claim that Zelichowski's declaration is not credible, she has not created a genuine issue for trial with regard to the issue of whether Strickland's misrepresentation was material.[5]

The court has considered all of plaintiff's arguments relating to the breach of contract claim and finds them to be without merit. In this case, the insurance policy was contestable at the time of Strickland's death. Because Strickland's answer to Question 4 was both false and material, Household has met its burden of proving material misrepresentation as an affirmative defense to the enforcement of the insurance contract. Accordingly, Household has not committed a breach of contract, and it is entitled to rescind the policy.

2. Unfair and deceptive acts and practices

Plaintiff also asserts a claim against Household pursuant to the Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq*. This claim is premised on an alleged violation of the Unfair Claim Settlement Practices Act, N.C. Gen. Stat. § 58-63-15(11). In order to establish a claim under the UDTPA, a plaintiff must show that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). Here, plaintiff maintains that Household committed an unfair claim settlement practice by denying her claim for benefits and by forcing her to institute litigation to attempt to recover the proceeds of the policy. (Pl.'s Mem. Resp. Def.'s Mot. Summ

---

[5] Plaintiff further notes that "Strickland's cause of death had no relation whatsoever to his driving record." (Pl.'s Mem. Resp. Def.'s Mot. Summ J., DE # 21, at 9.) However, "[t]he materiality of the misrepresentation is judged in terms of its effect upon the insurer's decision to underwrite the risk and therefore, the actual cause of death does not have to be related to the . . . matters misrepresented." Tedder v. Union Fid. Life Ins. Co., 436 F. Supp. 847, 849 (E.D.N.C. 1977).

14

J., DE # 21, at 11-12.) However, because the court has already determined that Household was entitled to rescind the policy in this case, it necessarily follows that Household did not commit an unfair claim settlement practice. Furthermore, for the reasons set forth in Household's memorandum in support of its motion for summary judgment (DE # 19 at 13-15), plaintiff has not identified any present monetary injury suffered as a proximate result of Household's settlement practices, separate and apart from the conduct underlying the breach of contract claim. As a result, plaintiff's UDTPA claim fails as a matter of law.

    3. Intentional or negligent misprepresentation

The court now turns to plaintiff's claims for intentional misrepresentation or, in the alternative, negligent misrepresentation. Both intentional misrepresentation (*i.e.*, fraud) and negligent misrepresentation share two essential elements: (1) the supplying by the defendant of false information, and (2) reliance on the false statement by the plaintiff. See Vernon v. Steven L. Mabe Builders, 430 S.E.2d 676, 679 (N.C. Ct. App. 1993), rev'd on other grounds, 444 S.E.2d 191 (N.C. 1994); Forbes v. Par Ten Grp., Inc., 394 S.E.2d 643, 647-48 (N.C. Ct. App. 1990), disc. rev. denied, 402 S.E.2d 824 (N.C. 1991).

Plaintiff contends that Household made two false representations in this case, one being that Household asserted that it was not obligated to pay plaintiff's claim. Because the court has already concluded that Household was not in fact obligated to pay plaintiff's claim, this representation was not false. Plaintiff further alleges that Household made a false representation when its agent told Strickland that he would be covered from "'day one.'" (Pl.'s Mem. Resp. Def.'s Mot. Summ J., DE # 21, at 13; Pl.'s Dep., DE # 21-6, at 35:14-15, 38:1-2.) Plaintiff fails to raise a genuine dispute of material fact regarding the falsity of this representation. It is clear

15

that the agent's representation regarding the extent of the coverage was based on the assumption, which he had the right to believe, that Strickland would provide accurate and truthful answers to the questions on the insurance application. However, as the court has previously determined, Strickland's answer to Question 4 was false. Thus, plaintiff's argument regarding this issue must fail because the condition underlying the agent's representation, *i.e.*, Strickland's truthfulness, was not met. Furthermore, to the extent that plaintiff is arguing that the agent who accepted Strickland's application represented to Strickland that he would be covered from "day one" even if he made false representations on his application, there is no evidence in the record to support this allegation. Accordingly, Household is entitled to summary judgment on the misrepresentation claims.

  4. <u>Breach of fiduciary duty</u>

  Plaintiff further alleges that Household breached a fiduciary duty by not properly explaining Question 4 to Strickland and by telling him that he would be covered from "'day one.'" (Pl.'s Mem. Resp. Def.'s Mot. Summ J., DE # 21, at 15-16; Compl., DE # 1-2, ¶ 46; Pl.'s Dep., DE # 21-6, at 35:14-15, 38:1-2.) This claim fails because plaintiff cannot base her cause of action on Household's alleged breach of its fiduciary duty to another person, *i.e.*, Strickland. <u>See</u> <u>Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC</u>, 723 S.E.2d 744, 752 (N.C. 2012) ("'For a breach of fiduciary duty to exist, there must first be a fiduciary relationship <u>between the parties</u>.'" (emphasis added) (quoting <u>Dalton</u>, 548 S.E.2d at 707)).

  Plaintiff also maintains that Household breached a fiduciary duty to her by denying her claim for benefits. (Compl., DE # 1-2, ¶ 46.) In making this argument, plaintiff has not cited to any case decided under North Carolina law which has held that an insurer owes a fiduciary duty

16

to a beneficiary of a life insurance policy.  Regardless, the court has found that Household rightfully denied plaintiff's claim for benefits.  As a result, Household did not breach a fiduciary duty to plaintiff, and Household's motion for summary judgment will be granted with respect to this claim.

      5. <u>Punitive damages</u>

Finally, plaintiff has brought a claim for punitive damages.  She argues that Household knew, or should have known, that her insurance claim was wrongfully denied and that the denial of her claim was in violation of the express terms of the policy.  (Compl., DE # 1-2, ¶¶ 49-50.)  Although plaintiff purports to assert her claim for punitive damages as a separate cause of action, a punitive damages claim is not an independent cause of action but is dependent upon the award of compensatory damages.  <u>See</u> N.C. Gen. Stat. § 1D-15(a) ("Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages . . . ."); <u>Iadanza v. Harper</u>, 611 S.E.2d 217, 223 (N.C. Ct. App. 2005) ("As a general rule, '[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action[.]'" (alterations in original) (citation omitted)).  As set forth above, plaintiff is not entitled to compensatory damages on any of her claims because Household is entitled to summary judgment on those claims.  Therefore, plaintiff may not recover punitive damages from Household.  <u>See</u> <u>Sellers v. Morton</u>, 661 S.E.2d 915, 923 (N.C. Ct. App. 2008) (holding that summary judgment dismissing underlying claims of tortious interference precluded award of punitive damages).

17

## III.  CONCLUSION

For the foregoing reasons, Household's request for judicial notice (DE # 15) and its motion for summary judgment (DE # 18) are GRANTED. The Clerk is directed to enter judgment in favor of Household and close the case.

This 26 October 2012.

                                               W. Earl Britt
                                               Senior U.S. District Judge